In re RICHARDS BROS.

(District Court, E. D. Michigan, N. D. April 14, 1913.)

PARTNERSHIP (§ 64*)—FIRM NAME—"ASSUMED NAME."

Pub. Acts Mich. 1907, No. 101, provides that no persons shall carry on business in the state under any designation, name, or style other than the real name or names of the individuals owning the business, unless such persons shall file in the office of the county clerk of the county in

which they do business a certificate showing the name under which such business is or is to be conducted, and the true or real full name or names of the same, with the home and post office address or addresses of such persons. *Held* that, where the bankrupts were two brothers, named respectively Charles J. Richards and Harry Richards, and they did business as a partnership under the name "Richards Bros.," such name was not an "assumed name," or a designation, name, or style other than the real name or names of the partners conducting the business, within such act, and hence their business so conducted was not rendered illegal because of their failure to file the statement provided for, so as to preclude their right to exemptions on the administration of their estate in bankruptcy.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 87–91; Dec. Dig. § 64.*]

In Bankruptcy. In the matter of Richards Bros., bankrupts. Application by bankrupts for allowance of exemptions, to which the receiver filed objections. Objections overruled, and exemptions allowed.

Coumans & Gaffney, of Bay City, Mich., for bankrupts.
Oscar W. Baker, of Bay City, Mich., for trustee in bankruptcy.

TUTTLE, District Judge. Two brothers, Charles J. Richards and Harry Richards, entered into partnership, doing business under the firm name and style of "Richards Bros." They did not file a certificate or do anything in the way of complying with Act No. 101 of the Public Acts of Michigan for 1907, which contains the following provision:

"No person or persons shall hereafter carry on or conduct or transact business in this state under any assumed name, or under any designation, name or style, corporate or otherwise, other than the real name or names of the individual or individuals owning, conducting or transacting such business, unless such person or persons shall file in the office of the clerk of the county or counties in which such person or persons own, conduct, or transact, or intend to own, conduct or transact such business, or maintain an office or place of business, a certificate setting forth the name under which such business owned is or is to be conducted or transacted, and the true or real full name or names of the person or persons owning, conducting or transacting the same, with the home and post office address or addresses of said persons."

Richards Bros. have been adjudicated bankrupts, both as individuals and as a copartnership, and now ask that they be allowed their exemptions of $250 each under the Michigan statute. The receiver opposed the allowance of these exemptions on the following grounds:

1. That "Richards Bros." is an assumed name, and a designation, name, and style other than the real names of the individuals conducting the business, and a violation of said act, and that therefore the business of said copartnership was illegal.

2. That, inasmuch as the business of the copartnership was illegal, the members of the copartnership are not entitled to their exemptions.

Is the name "Richards Bros." an "assumed name," or "designation, name, or style" other than the "real name or names" of the partners conducting the business of Richards Bros.? This court is of the opinion that the question should be answered in the negative. Since men began to combine their capital, efforts, and interests in a common business, it has been customary for actual brothers to use their surname

followed by the word "Bros." in carrying on their partnership business. While the act in question provides that the certificate shall set forth "the true and real full name or names" of the parties carrying on the business, it does not require the certificate to be filed except when they are carrying on the business under an "assumed name," or "designation, name, or style" other than the "real name or names" of the partners. The very fact that this same section of the act in express terms provides for "full names" in preparing the certificate leads the court to the conclusion that the Legislature did not intend that the word "name" should be construed as meaning both the surname and the Christian name, without the use of the adjective "full." This is a criminal statute, and a penalty is attached for its violation. It ought to be strictly construed against the party invoking it, and, giving it such construction, "Richards Bros." is not an assumed name, and is in fact the real name of the partners. It is not the full name, but this statute does not require the use of the full name, and it is plainly shown that the Legislature did not so intend by the fact that in this very section, when they intended to require the full name as in the certificate, it is expressly so stated.

The court is strengthened and supported in the opinion above stated by the opinion of other courts. Our statute is taken verbatim from the statute of New York. Section 363b, Penal Code N. Y., is identical with the section in question of the Michigan statute. The New York statute contained one exception which was not included in the Michigan statute, which exception is as follows:

"Nor shall this section be deemed or construed to prevent the lawful use of the partnership name or designation, provided that such partnership name or designation shall include the true or real name of at least one of such persons transacting such business."

This exception would make lawful a designation which contained the true or real name of one of the copartners. Our statute is more restrictive than the New York statute, because our statute requires that the real name of all the partners be used. This exception, however, does not in any way alter or change the construction as applied to the designation "Richards Bros." At the time that this act was passed in Michigan, the New York statute had been construed in the case of Castle Bros. v. Graham, 87 App. Div. 97, 84 N. Y. Supp. 120, heard before the Supreme Court, Appellate Division, on October 22, 1903, in which case the New York Supreme Court held that Castle Bros. was not an assumed name, and was the real name of the two brothers composing the partnership. It therefore should be assumed that the Legislature of the state of Michigan, when they enacted this statute prohibiting the use of assumed names and requiring the use of real names, did so with the intention that these terms should have the same meaning as that previously given by the New York courts.

Other courts have considered this same question, and a study of their decisions is both interesting and helpful. The states of Ohio, Montana, North Dakota, South Dakota, and California have similar statutes. They differ, however, from the New York and Michigan statutes, in that they are not penal, and do not impose the extreme con-

sequence of failure to comply with them, as do the statutes of Michigan and New York. The only penalty fixed by the statutes of these other states for failing to file the certificate is a bar to bringing suit until such certificate has been filed.

In the case of Pendleton et al. v. Cline, 85 Cal. 142, 24 Pac. 659, a man by the name of Pendleton and another by the name of Williams were conducting business under the name of "Pendleton & Williams" and the California court held that such name of "Pendleton & Williams" did not fall within the provision of section 2466 of the California Civil Code, which provided that:

"Every partnership transacting business in the state under a fictitious name, or a designation not showing the names of the persons interested, * * * must file * * * a certificate."

The California court held that the name of "Pendleton & Williams" was not a fictitious one, and expressly stated that, if the Legislature had meant so unusual a thing as requiring the full name of all of the parties, it would have said so explicitly. This is an early case, and the opinion is fully and carefully reasoned. It has been cited by the courts of many other states. The California court followed the same rule in two later cases: Carlock v. Cagnacci, 88 Cal. 600, 26 Pac. 597; McLean v. Crow, 88 Cal. 644, 26 Pac. 596.

Subsequent to the decision in Pendleton v. Cline by the California court, the Montana court in Guiterman v. Wishon, 21 Mont. 458, 54 Pac. 566, held that three brothers doing business in their surname with only the word "Bros." added, did not come within the act, and that the name was not a fictitious one: the Montana court citing the California case, and assuming that the decision holding that "Pendleton & Williams" was not an assumed name was authority for the conclusion reached in the Montana case.

The courts of Oklahoma, South Dakota, and North Dakota followed the reasoning of the California court in Pendleton v. Cline, supra. Patterson v. Byers, 17 Okl. 633, 89 Pac. 1114, 10 Ann. Cas. 810; Bovee v. De Jong, 22 S. D. 163, 116 N. W. 83; Walker v. Stimmel, 15 N. D. 484, 107 N. W. 1081.

The Ohio court, after certain conflicting decisions between the inferior courts, finally decided this matter in Cochran v. Hirsch, 6 Ohio Dec. 41, holding that the style "Hirsch Bros." was not a fictitious name. In this case the Ohio court again cites with approval the California case of Pendleton v. Cline, supra.

After the courts of all these other states, with statutes similar to California, had followed the case of Pendleton v. Cline, and had assumed that, if a man by the name of Pendleton and a man by the name of Williams could do business under the name of "Pendleton & Williams" without violating the statute, two brothers could do business in their surname with the word "Bros." added, then in 1902 came the decision in the California Supreme Court in North v. Moore, 135 Cal. 621, 67 Pac. 1037, holding that the name "Abrams Bros." was a violation of the California statute, and that it did not show the names of the persons interested as partners. It is a very brief opinion. No argument nor reasons are given for the results reached. Absolutely no

reference is made to their own opinion in Pendleton v. Cline and the other decisions of their own court, and in numerous other states which had followed Pendleton v. Cline. A careful reading of the case of North v. Moore, supra, indicates that no one appeared before the court to represent the appellant, and that the decision of the lower court was affirmed on the supposition that the appeal from the order of the lower court had been abandoned. There is nothing in this case to indicate that there was any intention on the part of the California court to change the rule laid down in Pendleton v. Cline, and there is nothing in this decision which should change the uniform holding of the courts that names like "Richards Bros." are not assumed or fictitious.

It is urged that the statute in question is more strictly construed in Michigan than in any of the other states, and the case of Cashin v. Pliter, 168 Mich. 386, 134 N. W. 482, is cited as authority for this contention. In this case the Michigan Supreme Court held that the use of the name "Flint Realty & Construction Company" was a violation of the statute, and in discussing the matter mentioned its objects and merits, and went far in stating that it was the purpose of the Legislature to advise the public by the certificate as to just what individuals were engaged in any particular business. Of course, the designation "Flint Realty & Construction Company" was plainly an assumed and fictitious name, and, no matter what the Michigan Supreme Court may have said in deciding that question, it cannot possibly be contended that in that case they have decided that a name like "Richards Bros." falls in the same class.

It was not a violation of the statute for the bankrupts to do business under the name "Richards Bros.," and, inasmuch as this court holds that they were not engaged in an unlawful business, it is not necessary to pass upon the second question raised by the trustee.

The usual exemptions under the Michigan statute will therefore be allowed to each of the bankrupts.