CHARLES E. IVES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JULIAN S. MYRICK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 40423, 40424, 51526, 51527, 63376. Promulgated January 18, 1934.

*Watson Washburn, Esq.*, for the petitioners.
*Frank A. Surine, Esq.*, for the respondent.

826

OPINION.

SEAWELL: The deficiencies in income taxes asserted by the respondent are for the years 1923, 1928, and 1929. The statutes involved, though not here quoted, are sections 212 (a), 213 (a), 218 (a), (b), (c), and 224 of the Revenue Act of 1921, and sections 21, 22 (a), 181, 182 (a), 183, 184, and 189 of the Revenue Act of 1928.

The record shows quite clearly that in executing the trust instruments bearing dates of May 1, 1923, and February 15, 1924, as set forth in our findings of fact, it was the intent of petitioners to reduce their tax liability by transferring their interests in their partnership of Ives & Co., also known as Ives & Myrick, to trustees for the benefit of their wives or relatives. Whether they accomplished their purpose as regards the taxes and years in issue, by resort to the means and methods adopted, is the question for our determination.

The wording of the indentures of May 1, 1923, and February 15, 1924, shows that the petitioners, each, did " assign, set over and transfer to the trustee [or trustees] all his right, title and interest in the partnership," of Ives & Co. or Ives & Myrick, " and all the assets and good will thereof * * * with full power to carry on the said partnership." The expressions used in the instruments are general and inclusive enough to constitute, in our opinion, a complete transfer of the partnership interests to the trustees named and to effect the purpose for which intended, unless rendered ineffective by operation of some law or by certain conduct of the parties.

The respondent contends that the trusts created by petitioners in the first instance—those dated May 1, 1923—were revocable during that year and that therefore the income from the partnership interests for that year is taxable to the grantors, the petitioners,

citing as authority *Grace Whitney Hoff*, 20 B.T.A. 86, and *Cleveland Trust Co., Executor*, 24 B.T.A. 132.

The petitioners, through their counsel, insist that the revocability of the trust instruments during 1923 does not make the income of the partnership attempted to be created by or through the operation of the trusts taxable for that year to the grantors or (as termed by petitioners' counsel) donors, and an extended argument based largely on the dissenting opinion in *N. H. Boynton*, 11 B.T.A. 1352, 1364-1374, and numerous court authorities cited, are relied on.

While we have carefully considered all arguments and citations, we do not, in the view we take of this particular question, deem it necessary to discuss the subject at great length.

In *Cleveland Trust Co., Executor, supra,* we held that the agreement under consideration was one of mere agency and not a trust instrument, following our holding to the same effect in *N. H. Boynton, supra.* In the *Grace Whitney Hoff* case, *supra,* however, there was a trust revocable in 1923, as in the instant proceedings, and in view of the fact that the petitioner therein had full power under the trust instrument to control both the corpus and the income thereof we held, as we conceived, in accordance with the principle enunciated by Mr. Justice Holmes in *Corliss v. Bowers*, 281 U.S. 376, that she was taxable on the 1923 income. While the question in that case was a constitutional one, involving section 219 (g) and (h) of the 1924 Revenue Act—which is not found in the 1921 Revenue Act, involved in the instant proceedings—the issue related to 1924 income of a revocable trust created in 1922 and the Court in its opinion used very broad and inclusive language, saying in part:

* * * The income that is subject to a man's unfettered command and that he is free to enjoy at his own option may be taxed to him as his income, whether he sees fit to enjoy it or not. We consider the case too clear to need help from the local law of New York or from arguments based on the power of Congress to prevent escape from taxes or surtaxes by devices that easily might be applied to that end.

The income for 1924, in the circumstances stated, was held taxable to the grantor. Some other and later decisions in which similar questions were involved are *Burnet v. Guggenheim*, 288 U.S. 280; *Reinecke v. Smith*, 289 U.S. 172; and *Burnet v. Wells*, 289 U.S. 670.

In none of these cases, nor in others considered, do we find any expressions which, in our opinion, justify a departure from the principle announced in *Corliss v. Bowers, supra*, and followed by us in *Grace Whitney Hoff, supra.* In fact we are on the contrary rather confirmed by the decisions in those cases of the correctness of our holding and statement in the *Hoff* case, *supra*, that it is clear from the Supreme Court's opinion in *Corliss v. Bowers, supra*, that, irrespective of the special provisions of section 219 (g) and (h) of the

1924 Revenue Act, control by the petitioner over the income has the effect of constituting it her income and so taxable.

In the instant proceedings it is clear from the record that the trusts created by the petitioners on May 1, 1923, were revocable by them during the remainder of that year and in our opinion, and we so hold, the income of the respective trusts created by petitioners Charles E. Ives and Julian S. Myrick should be included in computing their net income for 1923, as determined by the respondent.

On February 15, 1924, the record shows, the trusts of May 1, 1923, were revoked by petitioners and on the same day other trusts were executed by them which were irrevocable in their nature, and, petitioners insist, these trusts constituted a complete transfer of the partnership assets to the trustees. In view of the conclusion we have already reached and stated in reference to income of the trust partnership during the year 1923, we shall consider the trust instruments after they were made irrevocable and only for the years involved herein, 1928 and 1929.

The respondent contends that the petitioners continued as partners in the business conducted under the name of Ives & Co. or Ives & Myrick, regardless of the alleged transfer of their interests therein. Such insistence is based on the fact that there was no change made in the name under which the business of the partnership was carried on; that the business was conducted in the same office rooms as before the asserted transfers, where the original or old partners were always available for rendering assistance in the operation of the business; that the only notice of the alleged change in the partnership was notice thereof sent to the bank where the partnership account was kept, which account continued as formerly in the name of Ives & Co.; that insurance agents continued to sell their renewal commissions to the partnership of Ives & Co.; and that the insurance company which paid the commissions was not notified of the alleged change until 1928. In behalf of the respondent it is also insisted that such a partnership as petitioners assert was created and carried on after their alleged transfer of their partnership interests to the aforesaid trustees could not legally exist under the statutes of New York, no certificate being filed in the clerk's office of the county where the business of the partnership was to be conducted.

The continued use by the trustees of the partnership name, Ives & Co. or Ives & Myrick, in conducting their alleged partnership business, without filing a partnership certificate with the clerk of the county where the partnership business was to be carried on, as directed by section 81, McKinney's Consolidated Laws of New York, Annotated (Book 38, Partnership Law), did not, in our opinion, constitute a violation of any penal law of the state or make such partner-

ship absolutely null and void. See secs. 440 and 924, McKinney's Consolidated Laws of New York, *supra*, Book 39. See also *In re Richardson Bros.*, 206 Fed. 932; affd., 234 Fed. 1023, in which a statute asserted by the court to be identical with that of New York is construed and decisions of courts of New York and of numerous other states having similar statutes are cited as having rendered decisions thereon holding the use of partnership names similar to the one now in question, under circumstances of like character to those in the instant case, does not make such partnership business unlawful.

We have heretofore recognized the principle that in the State of New York a valid partnership may exist with a trustee as one of the partners. *M. A. Reeb*, 8 B.T.A. 759. See also *Richard H. Oakley*, 24 B.T.A. 1082. If, however, the trustees mentioned in the indentures or trust instruments herein were incapable of forming and operating a valid partnership in New York State, they could certainly take a transfer or assignment of the renewal commissions and bank account standing in the name of Ives & Co., own such jointly, receive payment of renewals, deposit same in the aforesaid bank account and reinvest the money in the purchase of other renewals, which the record shows was done. The trust instruments executed by petitioners conveyed " all the right, title and interest " which they had in the partnership assets. The record shows conclusively, in our opinion, that it was the intention of petitioners to make an absolute assignment of their partnership interests, subject to revocation between May 1, 1923, and February 15, 1924, and thereafter irrevocable. The evidence on this point is clear and uncontradicted. Their action in the matter was under advice of counsel and the fact that such action was with a view to reducing or avoiding to some extent the amount of income taxes which they would otherwise have to pay does not render the trust instruments ineffective or invalid. The tax liability of the trustees and beneficiaries would be the same as joint adventurers or as partners.

The respondent contends that the facts herein bring these cases within the rule and principle applied in *Lucas* v. *Earl*, 281 U.S. 111; *Burnet* v. *Leininger*, 285 U.S. 136; *Bishop* v. *Commissioner*, 54 Fed. (2d) 298; *Dickey* v. *Commissioner*, 56 Fed. (2d) 917; *Battleson* v. *Commissioner*, 62 Fed. (2d) 125, and other cases of like nature. There are facts in the instant cases similar to those in the cases cited, but there are also material differences, in view of which those cases, in our opinion, are not controlling herein.

The fact that nearly all the renewal commissions which were acquired by the trust partnership after the execution of the trusts were derived from insurance written by agents or persons other than the petitioners is established by the uncontradicted testimony of wit-

nesses. It was virtually stipulated at the hearing that of the renewal commissions acquired as stated only a few hundred dollars' worth arose from insurance written by the petitioners. The record further shows that the renewal commissions purchased by the trust partnership of Ives & Co. were paid for out of its bank account, carried in the same name, Ives & Co., under which the petitioners operated prior to the assignment. The Mutual Life Insurance Co. of New York was not notified of the assignment until April 11, 1928, prior to which date checks from the insurance company in payment of renewal commissions continued to be made payable to petitioners, were endorsed by them, and deposited in bank to the credit of the trust partnership account of Ives & Co., the petitioners having previously assigned, as shown by aforesaid trust instruments, all their right, title, and interest in such renewal commissions. However, under the circumstances of the instant case the failure to notify the insurance company did not, in our opinion, invalidate the assignment. The record shows that the petitioners, after making the revocable trusts of May 1, 1923, of their partnership interests in renewal commissions, never asserted any right, title, or interest to any of the renewal commissions and never—though they might have done so before making the irrevocable trusts of February 15, 1924—appropriated to their own use any of the same. All the renewal commissions paid after May 1, 1923, are shown by the evidence to have been paid into the bank account of the trust partnership and all renewal commissions purchased by or for the trust partnership were paid out of its Ives & Co. account, and after the execution of the irrevocable trusts such payments were, in our opinion, made with the money of the trust partnership and the income arising therefrom was in the sense of the law, as we view it, " earnings " of the trustee-partners or trust partnership and hence not taxable to the petitioners during the years in issue, 1928 and 1929.

In our opinion, the principles enunciated and applied in the cases cited below are controlling herein. What the petitioners assigned and transferred by irrevocable trust instruments were property (their Ives & Co. bank account) and rights to property (their interests in certain renewal commissions), as shown in our findings of fact. See *Nelson* v. *Ferguson*, 56 Fed. (2d) 121; certiorari denied, 286 U.S. 565; *Rose* v. *Commissioner*, 65 Fed. (2d) 616; *Eugene Siegel, Executor*, 20 B.T.A. 563; *William Ernst Seatree*, 25 B.T.A. 396.

We are, therefore, of the opinion and hold that each of the petitioners, for the years 1928 and 1929 involved herein, is liable for income taxes in issue only to the extent of income from renewal commissions derived from insurance personally written by him and

paid into the trust partnership account of Ives & Co., which counsel at the hearing stated was only a few hundred dollars and indicated there would be no disagreement as to the amount.

Reviewed by the Board.

> *Judgment will be entered for the respondent in Docket Nos. 40423 and 40424, and in Docket Nos. 51526, 51527, and 63376 under Rule 50.*

McMahon, Goodrich, and Leech concur in the result.

Black and Matthews dissent.

Sternhagen dissents in Docket Nos. 51526, 51527, and 63376, being of the opinion that the respondent's determination should be sustained.

Arundell and Murdock, dissenting: We dissent from the opinion in so far as it holds that income of a revocable trust was taxable under the Revenue Act of 1921 to the grantor.